UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ELG UTICA ALLOYS, INC.,

                  Plaintiff,

          v.

NIAGARA MOHAWK POWER CORP.
D/B/A NATIONAL GRID,

NATIONAL GRID GROUP PLC,

                  Defendants.

_____

**COMPLAINT**

Index No.   6:16-CV-1523
                       (BKS/ATB)

        Plaintiff ELG Utica Alloys, Inc. ("ELGUA"), by and through its undersigned

attorneys Phillips Lytle LLP, alleges as follows upon information and belief:

**INTRODUCTION**

        1.     This civil action is brought pursuant to the Comprehensive

Environmental Response, Compensation, and Liability Act, as amended by the Superfund

Amendments and Reauthorization Act of 1986, 42 U.S.C. § 9601 *et. seq.*, ("CERCLA"),

also known as Superfund; N.Y. E.C.L. § 27-1301 *et. seq.*, Article 12 of the New York

Navigation Law; N.Y. CVP. Law § 1401, and the common law of New York State.  This

Complaint concerns the reimbursement of Defendants Niagara Mohawk Power Corp.

d/b/a National Grid and National Grid Group PLC (collectively, "Defendant")'s share of

approximately $3,700,000.00 in past response costs and other damages (not including

millions of dollars in legal fees) incurred from 2012 to date, plus an unknown amount of

future response costs and damages (collectively "Site Related Costs") arising out of the

release or threatened release of hazardous substances at or from the Universal Waste Site,
an approximate 20 acre parcel of property located at Leland and Wurz Avenues in Utica,
New York ("Site").

2.      The Site operated as a metal recycling operation from at least the
1950s until 2012.  In 2008, ELGUA acquired the company which owned and operated the
Site.  Defendant sent, among other things, its used transformers containing PCBs to the Site
from at least the 1960s through the 1970s.  Defendant's transformers were broken open on-
Site and PCB-containing oils contained therein were spilled or otherwise disposed of on-
Site, contaminating Site soils and groundwater.

3.      In June 2012, Defendant was identified as a potentially responsible
party ("PRP") for the Site by the New York State Department of Environmental
Conservation ("NYSDEC"), reflecting the NYSDEC's determination that Defendant is
responsible for the generation, transportation, and arrangement for disposal of hazardous
substances  at the Site.

4.      Also in 2012, NYSDEC requested that Defendant, ELGUA and
others perform an investigation of the Site (as well as off-Site wetland areas and the adjacent
Mohawk River), to ascertain the nature and extent of Site impacts, including those impacts
resulting from the disposal of PCBs on the Site by the Defendant.

5.      ELGUA agreed to the NYSDEC's request and has worked voluntarily
with NYSDEC under two Orders on Consent and Administrative Settlements (Index Nos.
A6-0793-12-08 and A6-0850-15-03) ("AOCs") to study Site conditions, including, but not
limited to, the releases or threatened release of hazardous substances such as PCBs, PAHs,

solid wastes, petroleum and/or other regulated materials and pollutants. Conversely, Defendant rejected the NYSDEC's request.

6.     ELGUA also offered Defendant an opportunity to participate in the funding of Site Related Costs, however Defendant, again, rejected any involvement with the Site, despite its past disposal activities there.

7.     In addition to incurring response costs directly, ELGUA has also reimbursed NYSDEC for certain costs associated with its investigation of the Site. To date, ELGUA is the sole party that has funded and performed investigations of the Site.

8.     The  unreimbursed response costs ELGUA has incurred in investigating environmental contamination at the Site are approximately $3,700,000.00, well in excess of ELGUA's responsibility at the Site. Additionally, ELGUA has and will continue to incur additional investigation and remedial response costs at the Site, which are estimated to exceed $10,000,000.00.

9.     The purpose of this action is to hold Defendant liable for past and future investigation and remedial response costs incurred by ELGUA associated with release or threatened release of hazardous substances at or from the Site. Accordingly, ELGUA seeks a judgment against Defendant for reimbursement of the Site Related Costs ELGUA has incurred to date, as well as a declaratory judgment as to Defendant's liability for future Site Related Costs.

## JURISDICTION

10.     This Court has exclusive subject matter jurisdiction over ELGUA's CERCLA claims in Counts I and II pursuant to 42 U.S.C. § 9607 and § 9613(b) and 28 U.S.C. § 1331.

11.     The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over any claims asserted under Federal law.

12.     The Court has supplemental jurisdiction over the claims set forth in Counts III and IV pursuant to 28 U.S.C. § 1367 and the doctrine of pendent lite jurisdiction concerning any claims asserted under State law or common law.

13.     This Court has subject matter jurisdiction over the claims asserted in Count V pursuant to 28 U.S.C. § 1332.

## **VENUE**

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 9613(b) because the Site is located within this Judicial District and the releases and/or threatened releases of hazardous substances at the Site have occurred and/or threatened to occur within this Judicial District.

## **PARTIES**

15.     Plaintiff ELGUA is a Delaware corporation and successor to a prior owner and operator of the Site.

16.     Defendant Niagara Mohawk Power Corp. ("Niagara Mohawk") is a utility with its New York headquarters located at 300 Erie Boulevard, Syracuse, N.Y. which does business as "National Grid."  Defendant Niagara Mohawk generated, transported and arranged for the disposal of solid waste, hazardous substances, petroleum, and hazardous wastes at the Site.

17.     Defendant National Grid Group PLC is a foreign business corporation and the legal successor to Niagara Mohawk and its predecessors for its liability at the Site.

## GENERAL ALLEGATIONS

**A.     The Site**

18.     The Site is located at Leland and Wurz Avenues in Utica, New York and is approximately 20 acres in size.

19.     The Site is currently owned by ELGUA.

20.     The area surrounding the  Site is a mix of industrial and commercial uses.  The Mohawk River and wetlands are located to the north and east of the Site.

21.     NYSDEC hearing transcripts, including statements by former Site employees, establish that hundreds of transformers from Defendant containing thousands of gallons of PCB-containing oils and petroleum were brought to the Site for disposal and that the PCB oils and petroleum were spilled or otherwise disposed of on-Site.

22.     NYSDEC hearing transcripts, including statements by former Site employees, and other sources establish that Defendant's transformers and other electric equipment were hauled to the Site by Defendant itself using its own trucks, transported to the Site by or on behalf of Rufus Elefante & Associates at Defendant's direction, as well as by other  transporters.

23.     In hauling the transformers and other equipment itself to the Site, or arranging for them to be transported there by other entities, Defendant intended that the transformers and other equipment be disposed of at the Site.

24.     Defendant contributed to the environmental contamination at the Site by generating, transporting and arranging for the disposal of solid waste, hazardous substances, petroleum and hazardous waste at the Site from at least the 1960s through the early 1970s.

25.     Investigations at the Site by NYSDEC, ELGUA and others from at least 1977 to present have identified PCBs, petroleum and other hazardous substances on-Site generated by Defendant and released and disposed of at the Site.

**B.     Site Response Actions**

26.     No party other than ELGUA has participated in the process to study and remediate the Site to date.

27.     ELGUA has been comprehensively investigating the Site and specific off-Site areas under the oversight of NYSDEC.  In this process, ELGUA has incurred necessary response costs at the Site.

28.     ELGUA's investigations at the Site are ongoing and ELGUA has, and will continue to, incur necessary response costs at the Site in the future.

## COUNT I - CERCLA SECTION 107

29.     ELGUA realleges and incorporates by reference paragraphs 1 through 28 as if fully set forth herein.

30.     Pursuant to Section 107(a)(4)(B) and (a)(4)(C) of CERCLA, 42 U.S.C. §§ 9607(a)(4)(B), (a)(4)(C), any person who is liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), shall be liable for necessary response costs incurred by any other person consistent with the National Contingency Plan.

31.     Pursuant to CERCLA § 107(a)(3), 42 U.S.C. § 9607(a)(3), a person who, by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility, is strictly liable for all costs of removal or remedial actions that are incurred by any other person at such facility.

32.     Pursuant to CERCLA 107(a)(4), 42 U.S.C. § 9607(a)(4), any person who accepts or accepted any hazardous substances for transport to disposal facility or site selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, is strictly liable for all costs of removal or remedial actions that are incurred by any other person at such facility.

33.     The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9701(9).

34.     Defendant is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9701(21).

35.     PCBs and copper are "hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C.§ 9701(14).

36.     There have been "releases" and/or threatened "releases" of "hazardous substances" at and/or from the Site within the meaning of CERCLA § 101(22), 42 U.S.C. § 9601(22).

37.     ELGUA has incurred and will continue to incur significant Site Related Costs in response to the releases and/or threatened releases of hazardous substances at the Site.  These hazardous substances include the same types of hazardous substances that Defendant generated and/or disposed of at the Site.

38.     All of the Site Related Costs and other costs or damages that ELGUA has incurred and will incur in connection with the Site are necessary and consistent with the NCP.

39.     Defendant generated, arranged for the transport of, transported itself, and disposed of, hazardous substances on the Site pursuant to Section 107(a)(3) and

107(a)(4) of CERCLA, 42 U.S.C. §§ 9607(a)(3), (4), and thus is liable pursuant to CERCLA § 107(a)(3) and 107(a)(4), 42 U.S.C. §§ 9607(a)(3),(4) to ELGUA for the Site Costs and other costs and damages it has incurred and will incur at the Site.

40.     Defendant is therefore liable to ELGUA, jointly and severally, for ELGUA's Site Related Costs.

41.     Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), ELGUA is entitled to recover interest on Site Related Costs or damages it has paid or may pay in the future.

## COUNT II - CERCLA SECTION 113

42.     ELGUA realleges and incorporates by reference paragraphs 1 through 41 as if fully set forth herein.

43.     Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), authorizes any person to seek contribution from any other person who is liable or potentially liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

44.     ELGUA has reimbursed NYSDEC for amounts greater than ELGUA's allocable share of  such Site Costs and damages paid to date.

45.     ELGUA has and will continue to incur necessary response costs at the Site that are greater than ELGUA's allocable share of costs and damages.

46.     Defendant is liable under CERCLA Section 113(f)(1), 42 U.S.C. § 9613(f)(1), to ELGUA for those Site Costs paid by ELGUA that are in excess of ELGUA's allocable share and that are properly attributable to Defendant.

47.     ELGUA requests that the Court determine the parties' allocable shares with respect to the Site Related Costs and damages and determine that Defendant is liable to

ELGUA for those Site Related Costs and damages paid or incurred by ELGUA that are in excess of ELGUA's allocable share and are properly attributable to Defendant.

48.     Pursuant to Section 113(1) of CERCLA, 42 U.S.C. § 113(1), ELGUA has provided a copy of this Complaint to the Attorney General of the United States of America and the Administrator of the United States Environmental Protection Agency.

49.     Pursuant to Section 107(a), ELGUA is entitled to recover interest on Site related costs it has incurred or will incur in the future in excess of ELGUA's allocable share.

### COUNT III - NAVIGATION LAW

50.     ELGUA realleges and incorporates by reference paragraphs 1 through 49, as if fully set forth herein.

51.     Article 12 of the New York Navigation Law (the "Navigation Law") regulates petroleum discharges in New York State.

52.     Section 181(1) of the Navigation Law provides, in pertinent part, that: "any person who has discharged petroleum shall be strictly liable . . . for all cleanup and removal costs and all direct and indirect damages, no matter by whom sustained . . . ."

53.     Petroleum, as defined in Section 172(15) of the Navigation Law, includes, without limitation, any kind of petroleum product, including oils.

54.     Section 181(5) of the Navigation Law provides that "any claim by any injured person for the costs of cleanup and removal and direct and indirect damages . . . may be brought directly against the person who has discharged the petroleum . . . ."

55.     Defendant arranged for the disposal and discharge of petroleum products at the Site, including but not limited to transformer oils, and is responsible for and/or caused the petroleum discharges on the Site.

56.     ELGUA incurred, and will continue to incur, Site Related Costs for the investigation and remediation of the disposal and discharge of petroleum products at the Site by Defendant.

57.     By its action, Defendant is liable to ELGUA under Section 181(5) of the Navigation Law for the past, present and future Site Related Costs that ELGUA has incurred, and will incur in the future, which are the result of petroleum discharges at or from the Site.

## COUNT IV - DECLARATORY JUDGMENT FOR FUTURE SITE COSTS

58.     ELGUA realleges and incorporates by reference paragraphs 1 through 57, as if fully set forth herein.

59.     Defendant does not acknowledge that it is liable to ELGUA for Site Related Costs and damages arising out of or related to the Site.  Thus, an actual, substantial, and legal controversy has arisen and now exists between ELGUA, on the one hand, and Defendant, on the other, with regard to responsibility for such costs and damages and how these should be allocated among ELGUA and the Defendant. The controversy is of sufficient immediacy to warrant the issuance of declaratory judgment.

60.     Absent a judicial determination setting forth the parties' rights and obligations, including the appropriate allocable shares under CERCLA , ELGUA may be obligated in the future to incur Site Related Costs and damages that, under CERCLA, are in fact the responsibility of the Defendant.

61.     For these reasons, ELGUA seeks declaratory judgment under Section 113(g)(2) of CERCLA, 42 U.S.C. § 113(g)(2), and Section 2201 of the Judicial Code, 28 § U.S.C. 2201, allocating future Site Related Costs and damages among ELGUA and the Defendant, and holding Defendant liable for its share of future Site Related Costs as allocated to it.

## COUNT V - (CONTRIBUTION UNDER THE CPLR AND COMMON LAW)

62.     ELGUA hereby incorporates by reference paragraphs 1-61of this Complaint.

63.     New York CPLR § 1401 and common law provide that if two or more persons are subject to liability for damages or costs for the same injury, one person may claim contribution from the other for any damages or costs incurred by that person in excess of his or her equitable share.

64.     As a direct and proximate result of the acts and/or omissions of Defendant,  ELGUA has incurred, and will incur in the future, Site Related Costs for the investigation and remediation of the contamination at the Site in excess of its equitable share.

65.     ELGUA requests judgment in Count V for contribution from Defendant pursuant to New York CPLR § 1401 and common law for all Site Related Costs that ELGUA  has incurred and will incur in addressing the contamination at the Site, plus interest and costs, attorneys' fees, and such other relief as the Count may deem appropriate and just.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ELGUA respectfully requests that this Court enter a judgment in favor of ELGUA and against Defendant:

(1)     Awarding ELGUA recovery against Defendant for Site Related Costs and damages paid, or to be paid, by ELGUA, with interest;

(2)     Awarding ELGUA contribution against Defendant for the Site Related Costs and damages that are allocable to Defendant, with interest;

(3)     Granting judgment and award costs and damages to ELGUA under Article 12 of New York's Navigation Law due to petroleum contamination at the Site attributable to Defendant's petroleum  discharges and disposal at the Site.

(4)     Awarding ELGUA declaratory judgment determining ELGUA's allocable share, on the one hand, and Defendant's allocable share, on the other, for Site Related Costs and damages, determining that Defendant is liable for those costs and damages that are allocable to it, and holding that these determinations will be binding on any subsequent action or actions to recover future Site Related Costs.

(5)     Granting ELGUA such other and further relief as the Court deems just, proper or necessary.

Dated:   Buffalo, New York
         December 22, 2016

PHILLIPS LYTLE LLP

By: /s/ Myriah V. Jaworski
         Myriah V. Jaworski
         David P. Flynn
Attorneys for Plaintiffs
*ELG Utica Alloys, Inc.*
One Canalside
125 Main Street
Buffalo, New York  14203-2887
dflynn@phillipslytle.com
mjaworski@phillipslytle.com

Doc #01-2994450