# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

ELG UTICA ALLOYS, INC.,

        Plaintiff,                              6:16-cv-01523 (BKS/ATB)

v.

NIAGARA MOHAWK POWER CORP. d/b/a
NATIONAL GRID, SPECIAL METALS CORP.,
GENERAL ELECTRIC COMPANY, EMPIRE
RECYCLING CORP., and CHICAGO PNEUMATIC
TOOL COMPANY, LLC,

        Defendants.

---

NIAGARA MOHAWK POWER CORP. d/b/a
NATIONAL GRID,

        Third-Party Plaintiff,

v.

CBS CORPORATION (Successor-in-Interest to
WESTINGHOUSE ELECTRIC CORPORATION),

        Third-Party Defendant.

---

**Appearances:**

*For Defendant/Third-Party Plaintiff Niagara Mohawk Power Corp. d/b/a National Grid:*
Yvonne E. Hennessey
Barclay Damon, LLP
80 State Street
Albany, New York 12207

*For Third-Party Defendant CBS Corporation*
Alana E. Fortna
Babst, Calland, Clements and Zomnir, P.C.
603 Stanwix Street
Two Gateway Center, 6th Floor
Pittsburgh, Pennsylvania 15222

**Hon. Brenda K. Sannes, United States District Judge:**

MEMORANDUM-DECISION AND ORDER

I.   **INTRODUCTION**

This action arises from the investigation of the release or threatened release of hazardous substances at "the Universal Waste Site" (the "Site"), which "operated as a metal recycling operation" in Utica, New York from the 1950s until 2012. (Dkt. No. 43, ¶¶ 1–2). Third-Party Plaintiff Niagara Mohawk Power Corp. d/b/a National Grid ("National Grid") filed third-party claims against Third-Party Defendant CBS Corporation (successor-in-interest to Westinghouse Electric Corporation) ("CBS" or "Westinghouse") seeking: (1) contribution and a declaratory judgment under Section 113 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), *as amended*, 42 U.S.C. § 9613; (2) indemnity and contribution under Article 12 of the New York Navigation Law, N.Y. Nav. Law sections 170 *et seq.*; and (3) contribution under section 1401 of the New York Civil Practice Law and Rules, N.Y. C.P.L.R. § 1401 and New York common law. (Dkt. No. 69, ¶¶ 126–188).[1]

Presently before the Court is CBS's Motion to Dismiss National Grid's Third-Party Claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 117). For the reasons that follow, the motion to dismiss is denied in part and granted in part.

---

[1] Plaintiff ELG Utica Alloys, Inc. ("ELG") initiated this action under CERCLA; New York Navigation Law sections 170 *et seq.*; and (3) contribution under Section 1401 of the New York Civil Practice Law and Rules, N.Y. C.P.L.R. § 1401 and New York common law against the following defendants: (1) National Grid, (2) Special Metals Corp. ("SMC"), (3) General Electric ("GE"), (4) Empire Recycling Corp. ("ERC"), and (5) Chicago Pneumatic Tool Company, LLC ("CP") (collectively "Defendants"). (*Id.* ¶ 15–20). ELG seeks to hold Defendants liable for "past and future investigation and remedial response costs incurred with release or threatened release of hazardous substances at or from the Site. (Dkt. No. 43, ¶ 9). ELG also seeks a judgment against Defendants for reimbursement of Site-related costs it has incurred to date, (*id.*), and a declaratory judgment for any future costs. (*Id.*).

## II. BACKGROUND

### A. Facts[2]

#### 1. ELG's Allegations Against National Grid

##### a. The Site's Contamination

The Site is a 20-acre parcel of property located at Leland and Wurz Avenues in Utica, New York. (Dkt. No. 43, ¶ 1). The Site "operated as a metal recycling operation from at least the 1950s until 2012." (*Id.* ¶ 2). In 2008, ELG acquired the company that owned and operated the Site. (*Id.*). ELG currently owns the Site. (*Id.* ¶ 23). One or more Defendants sent hazardous substances to the Site, including, "scrap containing PCBs and/or used transformers containing PCBs." (*Id.* ¶ 2). Hundreds of "transformers from National Grid containing thousands of gallons" of oils and petroleum containing PCBs were brought to the Site for disposal by National Grid's own trucks, by Rufus Elefante & Associates at National Grid's direction, as well as by other transporters. (*Id.* ¶¶ 25–26). National Grid's transformers were "broken open on-Site" and oils containing PCBs were "spilled or otherwise disposed of on-Site," contaminating the Site's soil and groundwater. (*Id.* ¶¶ 2, 25).

##### b. Site Clean Up

The New York State Department of Environmental Conservation ("NYSDEC") has identified National Grid as a "potentially responsible part[y] ("PRP") for the Site."[3] (*Id.* ¶ 3). In 2012, NYSDEC requested that National Grid, ELG, and others investigate the Site "as well as off-Site wetland areas and the adjacent Mohawk River" to "ascertain the nature and extent of

---

[2] The following facts are drawn from ELG's Amended Complaint, (Dkt. No. 43), and National Grid's Third-Party Complaint. (Dkt. No. 69). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

[3] A PRP is "any person who may be liable pursuant to 42 U.S.C. [§] 9607(a), for response costs incurred and to be incurred by the United States not inconsistent with [the National Contingency Plan]." 40 C.F.R. § 304.12(m).

Site impacts, including impacts resulting from Defendants' disposal of PCBs on the Site." (*Id.* ¶ 4). ELG agreed to "NYSDEC's request and has worked voluntarily" under two settlements to study Site conditions, including the release of hazardous substances. (*Id.* ¶ 5). National Grid has declined to participate in funding of costs incurred from 2012 to the present, (*id.* ¶¶ 1, 6), and has rejected any involvement despite its "past disposal activities there." (*Id.* ¶ 6). National Grid denies that it "arranged for the disposal and discharge of petroleum products at the Site, including but not limited to transformer oils and lubricants," and alleges that "one or more" of its co-defendants or "Westinghouse are responsible for and/or caused the petroleum discharges on the Site." (Dkt. No. 69, ¶¶ 65, 156). To date, ELG has incurred $6.7 million in "investigating environmental contamination at the Site" and will continue to incur investigation and remedial response costs estimated to be in excess of $10 million. (Dkt. No. 43, ¶ 8).

        **2.**       **National Grid's Third-Party Allegations Against CBS**

Westinghouse—CBS's predecessor-in-interest—operated a transformer repair shop on Genesee Street and Wurz Avenue in Utica, "in close proximity to the Site until approximately 1960." (Dkt. No. 69, ¶¶ 157–58). The business conducted at the shop "included the manufacture, repair, sale and/or disposal of transformers, capacitors, and other electrical equipment and scrap materials." (*Id.*). A 1977 memorandum by the NYSDEC inspector indicated that "many of the transformers on the Site were stamped as rebuilt by 'Westinghouse of Utica.'" (*Id.* ¶ 159). NYSDEC documented that these Westinghouse capacitors at the Site were "broken open" and had their contents spilled. (*Id.* ¶ 160). The "capacitor label indicated that the capacitor oil contained PCBs," and samples taken by NYSDEC confirmed that the oil contained PCBs. (*Id.*). Numerous types of oils from the repair shop were dumped into the Mohawk River, buried onsite, or buried at local dumps. (*Id.* ¶ 161). Several witnesses interviewed by ELG "recalled receiving waste materials from Westinghouse at the Site." (*Id.* ¶ 162).

## III. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. DISCUSSION

### A. CERCLA Contribution Claim

#### 1. CERCLA's Statutory Framework

Congress enacted CERCLA to promote "the timely cleanup of hazardous waste sites," and to place "the cost of that [cleanup] on those responsible for creating or maintaining the hazardous condition." *Consol. Edison Co. of New York v. UGI Utils., Inc.*, 423 F.3d 90, 94 (2d Cir. 2005) (alteration in original) (quoting *Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930, 935–36 (8th Cir. 1995)). "As a remedial statute, CERCLA should be construed liberally to give effect to its purposes." *B.F. Goodrich v. Betkoski*, 99 F.3d 505, 514 (2d Cir. 1996), *overruled on other grounds by New York v. Nat'l Serv. Indus., Inc.*, 352 F.3d 682, 685 (2d Cir. 2003) (citing *Schiavone v. Pearce*, 79 F.3d 248, 253 (2d Cir. 1996)). Under § 9613(f)(1) of CERCLA, "[a]ny person may seek contribution from any other person who is liable or potentially liable under

section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title."

To make out a prima facie case under § 9613(f)(1), a plaintiff must allege that:

> (1) defendant fits one of the four classes of responsible parties outlined in § 9607(a); (2) the site is a facility; (3) there is a release or threatened release of hazardous substances at the facility; (4) the plaintiff incurred costs responding to the release or threatened release; and (5) the costs and response actions conform to the National Contingency Plan set up under the Act and administered by the EPA in order to prioritize hazardous substance release sites throughout the nation.

*B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1198 (2d Cir. 1992). Here, CBS only contests the first prong of the § 9613(f)(1) analysis—that is, whether National Grid has plausibly alleged that CBS's predecessor, Westinghouse, is among the four classes of responsible parties outlined in § 9607(a). Thus, the Court confines its analysis to the first prong.

National Grid alleges that Westinghouse is responsible as an arranger or a transporter under §§ 9607(a)(3), (4). These provisions impose strict liability on:

> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
>
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance.

42 U.S.C. § 9607(a)(3)–(4); *see also Town of Islip v. Datre*, 245 F. Supp. 3d 397, 417–18 (E.D.N.Y. 2017). If found to be an "arranger" or "transporter," that party is "held strictly liable for a broad range of remediation expenses." *New York v. Town of Clarkstown*, 95 F. Supp. 3d

section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title."

To make out a prima facie case under § 9613(f)(1), a plaintiff must allege that:

> (1) defendant fits one of the four classes of responsible parties outlined in § 9607(a); (2) the site is a facility; (3) there is a release or threatened release of hazardous substances at the facility; (4) the plaintiff incurred costs responding to the release or threatened release; and (5) the costs and response actions conform to the National Contingency Plan set up under the Act and administered by the EPA in order to prioritize hazardous substance release sites throughout the nation.

*B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1198 (2d Cir. 1992). Here, CBS only contests the first prong of the § 9613(f)(1) analysis—that is, whether National Grid has plausibly alleged that CBS's predecessor, Westinghouse, is among the four classes of responsible parties outlined in § 9607(a). Thus, the Court confines its analysis to the first prong.

National Grid alleges that Westinghouse is responsible as an arranger or a transporter under §§ 9607(a)(3), (4). These provisions impose strict liability on:

> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
>
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance.

42 U.S.C. § 9607(a)(3)–(4); *see also Town of Islip v. Datre*, 245 F. Supp. 3d 397, 417–18 (E.D.N.Y. 2017). If found to be an "arranger" or "transporter," that party is "held strictly liable for a broad range of remediation expenses." *New York v. Town of Clarkstown*, 95 F. Supp. 3d

660, 674 (S.D.N.Y. 2015) (quoting *Pfohl Bros. Landfill Site Steering Comm. v. Allied Waste Sys., Inc.*, 255 F. Supp. 2d 134, 148 (W.D.N.Y. 2003)). CERCLA's "broad reach extends liability to all those contributing to—from generation through disposal—the problems caused by hazardous substances." *Murtha*, 958 F.2d at 1198.

### 2. Allegations Made Upon Information and Belief

As a preliminary matter, CBS takes issue with these allegations made "upon information and belief," arguing that "courts have taken a sharper look at such averments when evaluating Rule 12(b)(6) motions post-*Iqbal* and *Twombly*." (Dkt. 117-1, at 11). CBS suggests that allegations based upon information and belief should not be credited unless (1) "the facts alleged 'upon information and belief' are not peculiarly within the possession and control of CBS" or (2) where the belief is "based on factual information that makes the inference of culpability plausible." (Dkt. No. 117-1, at 9, 10 (quoting *Arista Records LLC v. Doe*, 604 F.3d 110, 120 (2d. Cir. 2010)). CBS argues that "National Grid's allegations made 'upon information and belief' . . . are too speculative to meet the plausibility standard." (*Id.* at 12). The Court disagrees.

Here, some of the allegations based on information and belief concern facts that would likely be within the possession and control of CBS, including descriptions of the business conducted by the transformer repair shop. (*See* Dkt. No. 69, at ¶¶ 157, 158, 161). Moreover, there are several specific factual allegations—for instance, the NYSDEC inspection of the Site and witness interviews—that show that National Grid's "belief is based on factual information that makes the inference of culpability plausible." *Arista Records LLC*, 604 F.3d at 120. (*See, e.g.*, *id.* ¶ 168 (alleging, "[u]pon information and belief," that Westinghouse possessed "capacitors" containing PCBs); *id.* ¶ 160 (alleging that NYSDEC documented "Westinghouse capacitors at the Site that were broken open and the contents spilled" with oil containing PCBs)).

7

Moreover, Federal Rule of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555); *see also Lefkowitz v. John Wiley & Sons, Inc.*, No. 13-cv-6414, 2014 WL 2619815, at *9, 2014 U.S. Dist. LEXIS 75650, at *27 (S.D.N.Y. June 2, 2014) ("It is also of no moment that many of Plaintiff's allegations are predicated 'upon information and belief.' Prefacing allegations with this standard pleading qualification does not eviscerate the sufficiency of a complaint." (citing *Wu v. Pearson Educ., Inc.*, No. 09-cv-6557, 2010 WL 3791676, at *6, 2010 U.S. Dist. LEXIS 103488, at *17 (S.D.N.Y. Sept. 29, 2010))); *Clarkstown*, 95 F. Supp. 3d at 680–82. The Court thus rejects CBS's argument to disregard allegations made on information and belief.

### 3. Arranger Claim Under CERCLA

CERCLA does not specifically define what it means to "arrange for" disposal of a hazardous substance. *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 610–11 (2009). Nevertheless, "under the plain language of the statute, an entity may qualify as an arranger under § 9607(a)(3) when it takes intentional steps to dispose of a hazardous substance." *Id.*; *see also United States v. Alliedsignal, Inc.*, 62 F. Supp. 2d 713, 726 (N.D.N.Y. 1999) ("By the plain terms of the statute, [a defendant] may be liable under § 9607(a)(3) if they: (1) arranged for the disposal of, (2) hazardous substances, (3) owned or possessed by them." (citing 42 U.S.C. § 9607(a)(3))). Moreover, to establish arranger liability "there must be some nexus between the potentially responsible party and the disposal of the hazardous substance." *Gen. Elec. Co. v. AAMCO Transmissions, Inc.*, 962 F.2d 281, 286 (2d Cir. 1992)). Courts that have held

defendants liable as arrangers have generally "found that the defendant had some actual involvement in the decision to dispose of waste." *Id.*

National Grid, then, must "meet its burden of linking either [Westinghouse's] alleged disposal of or intent to dispose of PCBs" to the Site. *DVL, Inc. v. Gen. Elec. Co.*, 811 F. Supp. 2d 579, 596 (N.D.N.Y. 2010), *aff'd sub nom. DVL, Inc. v. Niagara Mohawk Power Corp.*, 490 F. App'x 378 (2d Cir. 2012). To do so, National Grid must do more than allege that Westinghouse "produced [hazardous waste] and that [waste] was found at each of the sites in question." *Id.* (alterations in original) (quoting *New Jersey Tpk. Auth. v. PPG Indus., Inc.*, 197 F.3d 96, 108–09 (3d Cir. 1999) (explaining, on summary judgment, that the plaintiff "must offer some proof that [the defendants] deposited, or caused the disposal of, [hazardous waste] at each of the sites at issue in this case")).

In support of its motion to dismiss National Grid's CERCLA claim, CBS argues that, under the Supreme Court's analysis of "arranger liability" in *Burlington Northern*, it cannot be liable if Westinghouse was "selling a new and useful product" and "that product later, and unbeknownst to the seller, disposed of the product in a way that led to contamination." (Dkt. No. 117-1, at 12 (quoting *Burlington Northern*, 556 U.S. at 610)). That is, according to CBS, because the Third-Party Complaint alleges that "CBS was in the business of repairing transformers and delivering the repaired transformers (a useful product) back to its customers in exchange for payment," National Grid has failed to plead allegations to close a necessary loop to establish "arranger and transporter liability," specifically, "that CBS had any knowledge or intention that its useful product would later be disposed of at the Site." (Dkt. No. 117-1, at 13). However, CBS's argument glosses over crucial allegations in National Grid's Third-Party Complaint.

9

Notably, National Grid alleges that Westinghouse "operated a transformer repair shop in the vicinity of the Site," "conducted business in the Utica area generally," and that this business "included the manufacture, repair, sale, and/or *disposal* of" various "electrical equipment and scrap materials." (Dkt. No. 69, ¶ 157) (emphasis added). National Grid further alleges that a May 1977 "inspection of the Site by . . . the NYSDEC inspector indicated that many of the transformers on the Site were stamped as rebuilt by 'Westinghouse of Utica;'" that NYSDEC documented "Westinghouse capacitors at the Site that were broken open and the contents spilled" and that the "capacitor label indicated that the capacitor oil contained PCBs." (Dkt. No. 69, ¶¶ 159–60). National Grid also alleges that "[s]everal witnesses interviewed by [ELG] recalled receiving waste materials from Westinghouse at the Site." (*Id.* ¶ 162).

Here, drawing all inferences in National Grid's favor, the allegations that: (1) part of Westinghouse's business entailed the "disposal" of the relevant electrical equipment; (2) witnesses "recalled receiving waste materials from Westinghouse at the Site;" (3) Site inspectors found Westinghouse capacitors with labels indicating that capacitor oil contained PCBs; and (4) Site inspectors found Westinghouse capacitors that were "broken open" with their "contents spilled," (Dkt. No. 69, ¶¶ 157, 159–60, 162), suffice to plausibly allege that Westinghouse took "intentional steps to dispose of a hazardous substance" at the Site, *Burlington Northern*, 556 U.S. at 611, and was thus an "arranger" under § 9607(a)(3).

### 4. Transporter Claim Under CERCLA

National Grid also alleges that Westinghouse was a "transporter" within the meaning of § 9607(a)(4). As noted above, § 9607(a)(4) provides for liability against "any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a

10

threatened release which causes the incurrence of response costs, of a hazardous substance." § 9607(a)(4).

To establish liability as a transporter a plaintiff must show that a defendant transported material containing a hazardous substance to the Site. *Prisco v. A & D Carting Corp.*, 168 F.3d 593, 605 (2d Cir. 1999). For many of the same reasons discussed above, the Court also finds that National Grid has stated a plausible claim against CBS as a transporter under § 9607(a)(4). As noted, Westinghouse's business included the "disposal of transformers, capacitors, and other electrical equipment and scrap materials." (Dkt. No. 69, ¶ 157). Moreover, "witnesses interviewed by Plaintiff recalled receiving waste materials *from* Westinghouse." (*Id.* ¶ 162) (emphasis added). Although, as CBS notes "waste materials" are not hazardous substances under CERCLA, in light of the allegations that NYSDEC documented oil containing PCBs from Westinghouse capacitors broken open at the Site, and drawing all inferences in National Grid's favor, it is plausible to infer that Westinghouse itself undertook the transporting of the electrical equipment that "broke[] open" and spilled PCBs at the Site. (Dkt. No. 69, ¶ 160). Accordingly, the Court finds that National Grid has done enough to give CBS "fair notice of what the . . . [CERCLA] claim is and the grounds upon which it rests." *Clarkstown*, 95 F. Supp. 3d at 681 (quoting *Erickson*, 551 U.S. at 93). Thus, CBS's motion to dismiss National Grid's CERCLA claim is denied as to both theories of liability under § 9607(a).

### B.  Article 12 of the New York Navigation Law

National Grid brings claims against CBS under sections 181 and 176 of Article 12 of the New York Navigation Law §§ 176(8), 181(5). The Court addresses § 181(5) and then § 176(8).

### 1.      N.Y. Nav. Law § 181(5)

Under § 181(1) of the New York Navigation Law, "[a]ny person[4] who has discharged petroleum shall be strictly liable, without regard to fault, for all cleanup and removal costs and all direct and indirect damages." *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 137 (2d Cir. 2010) (quoting N.Y. Nav. L. § 181(1)). Under § 181(5), "[a]ny claim by any injured person for the costs of cleanup and removal and direct and indirect damages based on the strict liability imposed by this section may be brought directly against the person who has discharged the petroleum."[5] N.Y. Nav. L. § 181(5). Thus, a "party who shoulders the cleanup and removal costs and is not at fault for the petroleum discharge may pursue a claim against the actual polluters." *Chevron U.S.A., Inc.*, 596 F.3d at 137 (citing N.Y. Nav. L. §§ 172(3), 181(5)).

CBS makes two arguments in support of its motion to dismiss National Grid's Navigation Law claim under § 181(5). First, CBS argues that National Grid cannot bring its claim because the statute "precludes a claim . . . by any person who is responsible for the discharge" at issue. (Dkt. No. 117-1, at 3; *id.* at 6–7). Second, CBS argues that its claim must be dismissed because National Grid has not alleged that it is an "injured person" under § 181(5) because it has not alleged that it has "performed any cleanup and removal at the Site or incurred any costs for cleanup and removal at the Site." (*Id.* at 7). National Grid acknowledges that "it has not yet incurred cleanup costs for petroleum," but argues—without citation to authority—against dismissal because it has "been put in an untenable position" by Plaintiff ELG, (Dkt. No 127, at 15–16), because it is forced to deny liability on the claims alleged against it by ELG while at the

---

[4] "Person" includes public or private corporations, companies, associations, firms, partnerships, joint stock companies, and individuals. *See* N.Y. Nav. Law § 172(14); *see also Schenectady Indus. Corp. v. Upstate Textiles, Inc.*, 689 F. Supp. 2d 282, 291 (N.D.N.Y. 2010).

[5] N.Y. Nav. Law § 172(3) defines a claim as "any claim by an injured person, who is not responsible for the discharge, seeking compensation for cleanup and removal costs incurred or damages sustained as a result of a petroleum discharge."

same time bracing for the possibility that National Grid "is ultimately found liable for the cleanup on petroleum at the Site" and that its liability "exceeds [National Grid's] proportionate share of responsibility." (*Id.* at 16). If that comes to pass, National Grid argues, it would indeed count as an injured party under the statute. (*Id.*).[6]

The Court disagrees with CBS's first argument that, at this stage of the litigation, National Grid can be classified as a "person who is responsible for the discharge." (*Id.* at 7). National Grid's third-party claims against CBS "repeat[] and reallege[] Paragraphs 1 through 155" of its answer to ELG's claims, which are contained in the same filing. (Dkt. No. 69, ¶ 156). Those "realleged" paragraphs include denials that it contributed to contamination at the Site. (*E.g.*, Dkt. No. 69, ¶ 65 (denying Plaintiff ELG's allegation that, Defendants, including National Grid, "arranged for the disposal and discharge of petroleum products at the Site, including but not limited to transformer oils and lubricants, and are responsible for and/or caused the petroleum discharges on the Site")). *See T & K Realty, LLC v. Teeter Envtl. Servs., Inc.*, No. 07-CV-0990, 2010 WL 1189375, at *6, 2010 U.S. Dist. LEXIS 28766, at *17 (N.D.N.Y. Mar. 24, 2010) ("Based on the current record, the Court rejects Moving Defendants' . . . argument. Although Plaintiff is the owner of the property where the contamination occurred, whether Plaintiff was in any way 'responsible for the discharge' is a matter that cannot be decided at this stage of the proceedings."). Consequently, at this stage of the litigation, the Court rejects CBS's argument that National Grid should be considered "responsible for the discharge" at the Site.

---

[6] National Grid further argues, again without any caselaw support, that its Navigation Law claims against CBS are "necessary and appropriate to preserve the right for discovery regarding CBS's liability for petroleum discharges at the Site and to ensure that CBS pays a proportionate share of any potential costs related to the cleanup of petroleum." (Dkt. No. 127, at 16 n.2). The Court notes that National Grid should be able to obtain much of this relevant discovery in furtherance of its CERCLA claims.

The Court, however, finds CBS's second argument—that National Grid is not an "injured person" entitled to bring a claim under the § 181(5) of the statute—persuasive. The plain language of the statute requires that a claimant seek "compensation for cleanup and removal costs incurred or damages sustained as a result of a petroleum discharge." § 172(3). To the extent that National Grid argues that it is an "injured person" because it has expended attorney's fees in this litigation, (Dkt. No. 127, at 6, 16), the Court disagrees. Clean up and removal costs are defined as "all costs associated with the cleanup and removal of a discharge including relocation costs . . . incurred by . . . any person with approval of the department." N.Y. Nav. L. 172(5); *Plumbing Supply, LLC v. Exxonmobil Oil Corp.*, No. 14-cv-3674, 2016 WL 1611490, at *2, 2016 U.S. Dist. LEXIS 53364, at *6 (S.D.N.Y. Apr. 21, 2016) (reaffirming its holding that "attorneys' fees plaintiff incurred are not 'cleanup and removal costs'"). Here, National Grid has not alleged that it has incurred any such costs or damages. *Id.*, 2016 WL 1611490, at *3, 2016 U.S. Dist. LEXIS 53364, at *9 ("To claim plausibly that plaintiff was entitled to recover 'cleanup and removal costs' from any defendant in this case, plaintiff needed to plead that it actually incurred such costs."). Accordingly, National Grid's Navigation Law claim under § 181(5) will be dismissed.

### 2. N.Y. Nav. Law § 176(8)

Under N.Y. Nav. L. § 176(8) "every person providing cleanup, removal of discharge of petroleum or relocation of persons pursuant to this section shall be entitled to contribution from any other responsible party." CBS argues that, under the terms of the statute, National Grid is foreclosed from claiming contribution because, again, the statute limits contribution to any "person who actually conducts cleanup and removal of the discharge" and that "there are no averments in National Grid's Third-Party Claim that it has engaged in remedial activities at the Site or incurred any response costs." (Dkt. No. 117-1, at 7–8).

14

The Court agrees with CBS's reading of § 176(8). Here, there are no allegations that National Grid has engaged in any cleanup or incurred any costs. *See FCA Assocs. v. Texaco, Inc.*, No. 03-cv-6083T, 2005 WL 735959, at *4, 2005 U.S. Dist. LEXIS 6348, at *13 (W.D.N.Y. Mar. 31, 2005) (dismissing navigation law claim where there was no indication that third-party claimant "ha[d] provided any cleanup or removal of petroleum from the Site," as required by "the plain language of Section 176(8)"). Thus, as with National Grid's claim under § 181(5), the Court will dismiss National Grid's Navigation Law claim under § 176(8).

CBS asks the Court to dismiss National Grid's Navigation Law claim with prejudice (Dkt. No. 117-1, at 9). By contrast, National Grid has requested that, in the event any of its claims are dismissed, it be given an opportunity to amend its Third-Party Complaint. (Dkt. No. 127, at 17). As National Grid may be able to amend its complaint to allege that it has incurred response costs, the Court will dismiss National Grid's Navigation Law claims without prejudice. *See Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("Amendment is not futile when the amended claim would withstand a motion to dismiss.").

### C. New York Civil Practice Law and Rules and Common Law Contribution Claim

Plaintiff also brings a contribution claim under N.Y. C.P.L.R. § 1401 and common law. (Dkt. No. 69, ¶¶ 185–88). Section 1401 provides, with exceptions not relevant here, that "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought." N.Y. C.P.L.R. § 1401. The amount of contribution is limited to the excess paid by the party seeking contribution "over and above his equitable share of the judgment recovered by the

injured party." *Rochester Gas & Elec. v. GPU, Inc.*, No. 00-cv-6369, 2006 WL 8446245, at *2, 2006 U.S. Dist. LEXIS 96167, at *7–8 (W.D.N.Y. Sept. 25, 2006) (citing N.Y. C.P.L.R. § 1402).

CBS argues that because "National Grid's factual allegations are insufficient to establish that CBS is liable" under CERCLA or the Navigation law, a claim under § 1401 is foreclosed. (Dkt. 117-1, at 4). National Grid counters that it has sufficiently alleged that "CBS is liable for wastes, including hazardous substances at the Site" and that if National Grid is ultimately found liable, it is "entitled to contribution from CBS for those same damages." (Dkt. No. 127, at 15).

The Court agrees that National Grid has alleged two plausible theories of liability under CERCLA and therefore denies CBS's motion to dismiss based on a failure to "establish that CBS breached a duty." (Dkt. No. 117-1, at 14). Accordingly, CBS's motion to dismiss is denied as to National Grid's contribution claim under § 1401 and common law.[7]

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Third-Party Defendant CBS's Motion to Dismiss Third-Party Claim (Dkt. No. 117) is **GRANTED** as to Third-Party Plaintiff National Grid's claims under the New York Navigation Law; and it is further

**ORDERED** that Third-Party Defendant CBS's Motion to Dismiss Third-Party Claim (Dkt. No. 117) is otherwise **DENIED** in its entirety; and it is further

**ORDERED** that Third-Party Plaintiff National Grid's Third-Party claims under the New York Navigation Law are **DISMISSED without prejudice**; and it is further

---

[7] The parties have not addressed, and the Court therefore does not consider, the propriety of a state law contribution claim when the underlying liability arises under CERCLA. *See New York State Elec. & Gas Corp. v. FirstEnergy Corp.*, No. 03-cv-0438, 2007 WL 1434901, at *5-11, 2007 U.S. Dist. LEXIS 35141, at *14-39 (N.D.N.Y. May 11, 2007). The parties have not addressed, and the Court likewise does not address, the possibility that a state law contribution claim may be preempted by CERCLA. *See Chevron U.S.A., Inc.*, 596 F.3d at 118, 137–39 (affirming district court's dismissal of "state contribution claim . . . as preempted under CERCLA").

**ORDERED** that Third-Party Plaintiff National Grid may amend the Third-Party Complaint within **THIRTY (30) days** of the date of this Order.

**IT IS SO ORDERED.**

Dated: October 10, 2019
       Syracuse, New York

Brenda K. Sannes
U.S. District Judge