UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ELG UTICA ALLOYS, INC.,

                      Plaintiff,                          6:16-cv-01523 (BKS/ATB)

v.

NIAGARA MOHAWK POWER CORP. d/b/a
NATIONAL GRID, SPECIAL METALS CORP.,
GENERAL ELECTRIC COMPANY, EMPIRE
RECYCLING CORP., and CHICAGO PNEUMATIC
TOOL COMPANY, LLC,

                      Defendants.

---

NIAGARA MOHAWK POWER CORP. d/b/a
NATIONAL GRID,

                      Third-Party Plaintiff,

v.

CBS CORPORATION (Successor-in-Interest to
WESTINGHOUSE ELECTRIC CORPORATION),

                      Third-Party Defendant.

---

**Appearances:**

*For Defendant/Third-Party Plaintiff Niagara Mohawk Power Corp. d/b/a National Grid:*
Yvonne E. Hennessey
Barclay Damon, LLP
80 State Street
Albany, New York 12207

*For Third-Party Defendant CBS Corporation*
Alana E. Fortna
Babst, Calland, Clements and Zomnir, P.C.
Two Gateway Center, 6th Floor
603 Stanwix Street
Pittsburgh, Pennsylvania 15222

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.     INTRODUCTION**

This action arises from the investigation of the release or threatened release of hazardous substances at "the Universal Waste Site" (the "Site"), which operated as a metal recycling operation in Utica, New York from the 1950s until 2012. (Dkt. No. 43, ¶¶ 1–2). Third-Party Plaintiff Niagara Mohawk Power Corp. d/b/a National Grid ("National Grid") filed claims against Third-Party Defendant CBS Corporation (successor-in-interest to Westinghouse Electric Corporation) ("CBS" or "Westinghouse") seeking: (1) contribution and a declaratory judgment under Section 113 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), *as amended*, 42 U.S.C. § 9613; (2) indemnity and contribution under Article 12 of the New York Navigation Law, N.Y. Nav. Law sections 170 *et seq*. (the "Navigation Law"); and (3) contribution under section 1401 of the New York Civil Practice Law and Rules, N.Y. C.P.L.R. § 1401, and New York common law (the "contribution claim"). (Dkt. No. 69, ¶¶ 126–188).

On October 10, 2019, the Court granted in part CBS's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and dismissed National Grid's claim under the Navigation Law. *See ELG Utica Alloys, Inc. v. Niagara Mohawk Power Corp.*, No. 16-cv-01523, 2019 WL 5086020, 2019 U.S. Dist. LEXIS 17615 (N.D.N.Y. Oct. 10, 2019). CBS now moves for partial judgment on the pleadings under Federal Rule of Civil Procedure 12(c) as to National Grid's contribution claim under section 1401 and common law.[1] (Dkt. No. 189). The

---

[1] In its motion to dismiss, CBS did not argue that National Grid's contribution claim was preempted by CERCLA, so the Court did not address the issue. *Id.*, 2019 WL 5086020, at *7 n.7, 2019 U.S. Dist. LEXIS 176152, at *20 n.7.

parties have filed responsive briefing. (Dkt. Nos. 191, 193). For the reasons that follow, the motion is denied.

## II.      BACKGROUND

The Court assumes familiarity with the relevant facts and procedural history of this case, which the Court detailed in its October 10, 2019 Memorandum-Decision and Order. *See ELG Utica Alloys*, 2019 WL 5086020, 2019 U.S. Dist. LEXIS 17615. However, the Court supplements that factual summary with the following allegations drawn from ELG's amended complaint, (Dkt. No. 43), National Grid's answer to ELG's amended complaint, and National Grid's Third-Party Complaint against CBS. (Dkt. No. 69).[2]

Plaintiff ELG Utica Alloys, Inc. ("ELG") initiated this action under CERCLA; New York Navigation Law sections 170 *et seq.*; and contribution under Section 1401 of the New York Civil Practice Law and Rules, N.Y. C.P.L.R. § 1401, and New York common law against defendants National Grid, Special Metals Corp., General Electric, Empire Recycling Corp., and Chicago Pneumatic Tool Company, LLC. (*Id.* ¶ 15–20). ELG seeks to hold Defendants liable for "Site related costs and damages," including costs and damages due to petroleum contamination at or from the Site. (Dkt. No. 43, ¶ 9, p. 14). ELG also seeks a judgment against Defendants for reimbursement of Site-related costs it has incurred to date, (*id.*), and a declaratory judgment for any future costs. (*Id.*).

ELG alleges, as part of its Navigation Law claim, that the defendants, including National Grid, "arranged for the disposal and discharge of petroleum products at the Site, including but not limited to transformer oils and lubricants" and that the defendants are "responsible for and/or

---

[2] The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

caused the petroleum discharges on the Site." (Dkt. No. 43, ¶ 65). Further, ELG alleges that it has incurred past response costs and other damages from 2012 to date "and will continue to incur" unknown future response costs and damages, including costs resulting from "petroleum discharges at or from the Site." (Dkt. No. 43 ¶¶ 1, 66).

In its answer to ELG's amended complaint, National Grid denies the allegations related to petroleum discharge at the Site and "admit[s] upon information and belief," that "one or more" of its co-defendants "or Westinghouse are responsible for and/or caused the petroleum discharges on the Site." (Dkt. No. 69, ¶¶ 65–66). In its third-party allegations against CBS, National Grid alleges that "numerous types of oil from the Westinghouse . . . transformer repair shop w[ere] reportedly dumped into the Mohawk River, buried onsite, or buried at local dumps." (*Id.* ¶ 161). Further, "Westinghouse transported or arranged for the transport and disposal of scrap materials and other equipment containing oils and lubricants at the Site where such scrap materials and equipment were broken open, shredded, or otherwise processed" and that this "resulted in discharges of petroleum at the Site from Westinghouse's scrap material and other equipment." (*Id.* ¶ 181–82). These allegations were all incorporated by reference in National Grid's contribution claim. (*Id.* ¶ 185).

### III.  LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). Thus, "[t]o survive a Rule 12(c) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)). "Although a complaint need not contain detailed factual

allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court will grant a motion for judgment on the pleadings "if, from the pleadings, the moving party is entitled to judgment as a matter of law." *VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, 594 F. Supp. 2d 334, 340 (S.D.N.Y. 2008).

IV.  DISCUSSION

　　A.  **Principles of Preemption as Applied to CERCLA**

Under the Supremacy Clause of the United States Constitution, "state and local laws that conflict with federal law are 'without effect.'" *N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 103–04 (2d Cir. 2010) (quoting *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008)). In general, three types of preemption exist:

> (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives.

*Figueroa v. Foster*, 864 F.3d 222, 227–28 (2d Cir. 2017) (quoting *N.Y. SMSA*, 612 F.3d at 104). "[C]ourts should not lightly infer" that state or local law has been preempted by federal law. *Bedford Affiliates v. Sills*, 156 F.3d 416, 426 (2d Cir. 1998) (quoting *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 490 (1987)), *overruled on other grounds by W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc.*, 559 F.3d 85, 90 (2d Cir. 2009).

5

The Second Circuit has "held that CERCLA does not expressly preempt applicable state law." *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 138 (2d Cir. 2010) (quoting *Marsh v. Rosenbloom*, 499 F.3d 165, 177 (2d Cir. 2007)). The Second Circuit has also concluded that field preemption does not apply because "CERCLA is not such a comprehensive scheme that it cannot be supplemented by state law." *Niagara Mohawk*, 596 F.3d at 138 (quoting *Bedford Affiliates*, 156 F.3d at 427).

That leaves conflict preemption. "Congress created the statutory right to contribution in § 9613(f) of CERCLA in part to encourage settlements and further CERCLA's purpose as an impetus to efficient resolution of environmental hazards." *Niagara Mohawk*, 596 F.3d at 138. As the Second Circuit explained, CERCLA's section 9613 was "intended to provide the only contribution avenue for parties with response costs incurred under CERCLA" and "is intended to standardize the statutory right of contribution and, in doing so, avoid the possibility of fifty different state statutory schemes that regulate the duties and obligations of non-settling [potentially responsible parties ("PRPs")][3] who might be viewed as tortfeasors under the law of any particular state." *Id.*; 42 U.S.C. § 9613(f)(3)(C) ("Any contribution action brought under this paragraph shall be governed by Federal law."). Thus, in *Niagara Mohawk*, the Second Circuit

---

[3] Under CERCLA, a PRP is defined as:

> (1) the owner and operator of a vessel or a facility, (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance.

42 U.S.C. § 9607(a); *see also Niagara Mohawk*, 596 F.3d at 121 n.6.

concluded that "state law contribution claims for *CERCLA response costs* conflict with CERCLA contribution claims and therefore are preempted." *Niagara Mohawk*, 596 F.3d at 138 (emphasis added); *id.* at 138 n.28 ("[O]ur conclusion is in keeping with other courts' determinations that CERCLA is intended to be the exclusive scheme governing hazardous waste claims that fall within its purview."); *Bedford Affiliates*, 156 F.3d at 426 ("CERCLA as a whole does not expressly preempt state law, but simply prohibits states from 'recovering compensation for the same removal costs or damages or claims' under both CERCLA and state or other federal laws.") (quoting *State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1041 (2d Cir. 1985)). The question here, then, is whether National Grid's contribution claim plausibly alleges a theory of recovery apart from "CERCLA response costs." *Niagara Mohawk*, 596 F.3d at 138.

**B.     Application**

CBS argues that allowing the state contribution claim to proceed would contravene CERCLA's plain language, which precludes "recovering compensation for the same removal costs or damages or claims pursuant to any other State or Federal law." (Dkt. No. 189-1, at 6 (quoting 42 U.S.C. § 9614(b))). It also argues that "CERCLA Section [9613] preempts state-law claims seeking contribution for response costs" and that to find otherwise would undermine CERCLA's incentive structure that encourages settlement. (*Id.* at 7–8; Dkt. No. 193, at 9). CBS argues that National Grid's contribution claim is based "on the underlying federal liability alleged against CBS" through CERCLA. (Dkt. No. 189-1, at 8–9).

National Grid acknowledges that CERCLA preempts "state law and common law claims" to the extent the claim would entail recovery for the "same removal costs or damages," (Dkt. No. 191, at 11 (citation and quotation marks omitted)), but argues that CBS's motion should be denied because National Grid's contribution claim encompasses non-CERCLA damages (*Id.* at 11–12). National Grid argues that it seeks contribution from CBS "commensurate with ELG[]'s

7

state law claims against" National Grid, which include allegations that National Grid is responsible for waste related to petroleum, which CERCLA does not cover. (*Id.* at 6–7, 11–14). National Grid further argues that the mere possibility for double recovery does not warrant dismissal at this early stage of the proceedings. (*Id.* at 14–16).

While state law contribution claims for CERCLA response costs are preempted, to the extent National Grid is found liable for and seeking contribution for costs incurred outside of CERCLA, it may have a basis for contribution under New York Law. *Niagara Mohawk*, 596 F.3d at 138–139.[4]  *See MPM Silicones, LLC v. Union Carbide Corp.*, 931 F. Supp. 2d 387, 404 (N.D.N.Y. 2013) (finding that Second Circuit in [*Niagara Mohawk*] "clearly implied" that "there *are* grounds for state-law contribution when the PRP has incurred costs outside of CERCLA"). Here National Grid argues that, "there may be . . . areas not covered by CERCLA," citing to the allegations regarding petroleum contamination and the fact that petroleum is not a hazardous substance covered by CERCLA. *See* 42 U.S.C. § 9601(14); *e.g.*, *Town of Halfmoon v. Gen. Elec. Co.*, 105 F. Supp. 3d 202, 221 (N.D.N.Y. 2015) ("CERCLA specifically excludes from coverage damages related to petroleum contamination." (citing 42 U.S.C. § 9601(33))); *Coastline Terminals of Conn., Inc. v. USX Corp.*, 156 F. Supp. 2d 203, 209 (D. Conn. 2001) (same).

ELG has alleged that National Grid is responsible for petroleum contamination at the Site (Dkt. No. 43, ¶¶ 65–66), and National Grid has alleged that Westinghouse was responsible for that contamination. "Contribution liability [under section 1401] 'may flow from either of two sources: breach of duty to the plaintiff [the injured party] *or* to the party seeking contribution.'" *Perkins Eastman Architects, P.C. v. Thor Eng'rs, P.A.*, 769 F. Supp. 2d 322, 327 (S.D.N.Y.

---

[4] N.Y. C.P.L.R. Section 1401 provides, in relevant part, that "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought."

2011) (quoting *Westport Marina, Inc. v. Boulay*, 783 F. Supp. 2d 344, 357 (E.D.N.Y. 2010) (second alteration in original)); *id.* ("[T]he 'critical requirement' for a successful contribution claim is that 'the contributing party must have had a part in causing or augmenting the injury for which contribution is sought.'" (quoting *Fashion Shop LLC v. Virtual Sales Group Corp.*, 525 F. Supp. 2d 436, 446 (S.D.N.Y. 2007))). For instance, here, National Grid alleges that "Westinghouse transported or arranged for the transport and disposal of scrap materials and other equipment containing oils and lubricants at the Site where such scrap materials and equipment were broken open, shredded, or otherwise processed" and that this "resulted in discharges of petroleum at the Site from Westinghouse's scrap material and other equipment." (Dkt. No. 69, ¶¶ 181–82). National Grid further alleges that "numerous types of oil from the Westinghouse . . . transformer repair shop [were] reportedly dumped into the Mohawk River, buried onsite, or buried at local dumps." (*Id.* ¶ 161). These allegations were all incorporated by reference in National Grid's contribution claim.[5] (*Id.* ¶ 185).

In its reply, CBS argues that the petroleum exclusion does not apply to National Grid's claims against CBS because the contamination was inextricably intertwined with PCBs. CBS argues—without citation to caselaw—that contamination from PCB-containing oils is covered under CERCLA. (Dkt. No. 193, at 5). There appears to be caselaw support for this contention. *E.g.*, *City of New York v. Exxon Corp.*, 744 F. Supp. 474, 490 (S.D.N.Y. 1990) (analyzing CERCLA's legislative history and explaining that "the primary purpose of the exclusion for petroleum, which is defined principally in terms of crude oil and crude oil fractions, was to exclude from CERCLA's coverage spills or other releases strictly of oil . . . not releases of

---

[5] To the extent CBS suggests that National Grid may not rely on allegations incorporated by reference from its now-dismissed Navigation Law claim to support its contribution claim, the Court rejects that suggestion. (*See* Dkt. No. 189-1, at 5; Dkt. No. 191, at 9–10). *See Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 353 (D. Vt. 2010) ("Incorporation by reference is proper pleading.") (citation omitted).

hazardous substances mixed with oil"); *see also Mid Valley Bank v. N. Valley Bank*, 764 F. Supp. 1377, 1384 (E.D. Cal. 1991) (collecting cases and concluding at summary judgment that "waste oil containing CERCLA hazardous substances does not fall under the CERCLA petroleum exclusion").

National Grid acknowledges that contamination from petroleum and contamination from PCB's, which are "generally suspended in a very high percentage of oil," "may be related." (Dkt. No. 191, at 10 n.3).  And ELG has alleged contamination from "PCB-containing oils and petroleum."  (Dkt. No. 43, ¶ 25). There are also, however, allegations of petroleum discharge and contamination which do not refer to PCBs. (Dkt. No. 43, ¶¶ 27, 35, 65). Further, as mentioned, National Grid alleges that "numerous types of oil" from Westinghouse's repair shop were disposed. (Dkt. No. 69, ¶ 161). Construing the allegations in the light most favorable to National Grid, the Court cannot say, at this early stage of the case that National Grid's sole basis for recovery is response costs under CERCLA. *See Volunteers of Am. of W. N.Y. v. Heinrich*, 90 F. Supp. 2d 252, 258 (W.D.N.Y. 2000) (denying motion to dismiss "on the basis of CERCLA preemption" where the plaintiff "alleged conduct which may fall under CERCLA's 'petroleum exclusion' (such as releases of unadulterated gasoline)"); *Gen. Elec. Co.*, 105 F. Supp. 3d at 221 (explaining, in the context of a Navigation Law claim, that claims relating to "release of petroleum are not preempted by CERCLA" and "whether the PCBs that have been resuspended in the Hudson River during the dredging project are petroleum-based or have been mixed with petroleum is an issue of fact to be determined at trial"); *see also HLP Props., LLC v. Consol. Edison Co. of N.Y.*, No. 14-cv-01383, 2014 WL 6604741, at *8, 2014 U.S. Dist. LEXIS 163336, at *21 (S.D.N.Y. Nov. 21, 2014) ("While the Complaint does not specify the nature of those costs or the reason that they are not covered by CERCLA, drawing all inferences in Plaintiffs'

favor at this stage of the proceedings, the Complaint sufficiently pleads a request for costs not recoverable under CERCLA.").

Thus, the Court concludes at this stage that National Grid's contribution claim is not preempted by CERCLA.[6]

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Third-Party Defendant CBS's Motion to for Judgment on the Pleadings (Dkt. No. 189) is **DENIED**.

**IT IS SO ORDERED.**

Dated: May 22, 2020
Syracuse, New York

Brenda K. Sannes
U.S. District Judge

---

[6] In support of its argument that National Grid's state law contribution claim is preempted, CBS cites *N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp. ("NYSEG")*, No. 03-cv-0438, 2007 WL 1434901, 2007 U.S. Dist. LEXIS 35141 (N.D.N.Y. May 11, 2007), a case that is inapposite. In *NYSEG*, the court ruled on summary judgment that conflict preemption precluded a PRP's contribution claim under section 1401, after its Navigation Law claim had been dismissed by stipulation and its CERCLA contribution claim had been dismissed because the plaintiff, who had remediated a site voluntarily, had no contribution right of action under CERCLA. *Id.*, 2007 WL 1434901, at *2–3, *7, *11, 2007 U.S. Dist. LEXIS 35141, at *7, *22, *36–37; *NYSEG*, Dkt. No. 90 (N.D.N.Y. June 27, 2005). In that case, the plaintiff was "conspicuously vague" regarding the remaining source of liability. *Id.*, 2007 WL 1434901, at *7 n.6, 2007 U.S. Dist. LEXIS 35141, at *22 n.6. The court ruled that allowing state contribution in that situation where "none [was] available under CERCLA" would undermine CERCLA's contribution scheme. *Id.*, 2007 WL 1434901, at *11, 2007 U.S. Dist. LEXIS 35141, at *36–37. In so doing, the court distinguished state law claims seeking damages that are not available under CERCLA, which are not subject to conflict preemption. *Id.*, 2007 WL 1434901, at *10, 2007 U.S. Dist. LEXIS 35141, at *34. Here, National Grid's contribution claim is viable to the extent it seeks contribution for costs incurred for contamination not covered by CERCLA.