**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ELG UTICA ALLOYS, INC.,

                              Plaintiff,                              6:16-cv-1523 (BKS/ATB)

v.

NIAGARA MOHAWK POWER CORP. d/b/a National
Grid, SPECIAL METALS CORP., GENERAL ELECTRIC
COMPANY, EMPIRE RECYCLING CORP., and
CHICAGO PNEUMATIC TOOL COMPANY, LLC,

                              Defendants.

---

NIAGARA MOHAWK POWER CORP. d/b/a National
Grid,

                              Third-Party Plaintiff,

v.

CBS CORPORATION (successor-in-interest to
Westinghouse Electric Corporation),

                              Third-Party Defendant.

---

**Appearances:**

*For Plaintiff:*
David P. Flynn
David L. Cook
Robert Reagan
Phillips Lytle LLP
One Canalside
125 Main Street
Buffalo, NY 14203

*For Defendant Niagara Mohawk Power Corp. d/b/a National Grid:*
Yvonne E. Hennessey
Barclay Damon LLP
80 State Street
Albany, NY 12207

*For Defendant Special Metals Corp.:*
Doreen A. Simmons
Hancock Estabrook, LLP
1800 AXA Tower I
100 Madison Street
Syracuse, NY 13202

*For Defendant General Electric Company:*
Kristin Carter Rowe
Dean Sommer
Young/Sommer LLC
Executive Woods
Five Palisades Drive
Albany, NY 12205

*For Defendant Empire Recycling Corp.:*
Gary S. Bowitch
Law Office of Gary S. Bowitch
13 Willow Street
Castleton, NY 12033

*For Defendant Chicago Pneumatic Tool Company, LLC:*
Agnes Antonian
Connell Foley, LLP
56 Livingston Avenue
Roseland, NJ 07068

*For Third-Party Defendant CBS Corporation (successor-in-interest to Westinghouse Electric Corporation):*
Marc J. Felezzola
James D. Mazzocco
Babst, Calland, Clements & Zomnir, P.C.
Two Gateway Center
603 Stanwix Street, 8th Floor
Pittsburgh, PA 15222

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

Plaintiff ELG Utica Alloys, Inc. brought this action asserting claims under the

Comprehensive Environmental Response, Compensation, and Liability Act of 1980

("CERCLA"), 42 U.S.C. §§ 9601–9675; under Article 12 of the New York Navigation Law; and

for contribution under the New York Civil Practice Law and Rules ("CPLR") and New York common law.  (Dkt. No. 43 (Amended Complaint)).  Plaintiff's claims relate to the release or threatened release of hazardous substances at the location of a former "metal recycling operation" in Utica, New York (the "Site").  (*Id.* ¶¶ 1–2).  Plaintiff sought to hold Defendants Niagara Mohawk Power Corp. d/b/a National Grid ("National Grid"), Special Metals Corp. ("SMC"), General Electric Company ("GE"), Empire Recycling Corp. ("ERC"), and Chicago Pneumatic Tool Company, LLC ("CP") liable for their share of approximately $6,700,000 in "past response costs and other damages . . . incurred from 2012 to date" and "future response costs and damages."  (*Id.* ¶¶ 1, 9).

On March 27, 2023, the Court issued a decision addressing the joint motion of Defendants and Third-Party Defendant CBS Corporation (successor-in-interest to Westinghouse Electric Corporation) for summary judgment and spoliation sanctions pursuant to Rules 56 and 37 of the Federal Rules of Civil Procedure.  (Dkt. No. 274).  The Court granted Defendants' motion for summary judgment on Plaintiff's federal claims, granted Defendants' motion for spoliation sanctions, and deferred selection of an appropriate sanction.  (*Id.*).  The Court directed the parties to meet and confer regarding how they would proceed with Plaintiff's remaining state-law claims and the issue of sanctions, and whether a mediation or settlement conference might be productive.  (*Id.*, at 53–54).  After unsuccessful settlement efforts, the Court directed the parties to brief their position as to monetary and non-monetary sanctions.  (Dk. No. 289).

The parties' briefing is now before the Court, (Dkt. Nos. 291–92), and the issue of sanctions is ready for decision.

## II.    BACKGROUND

### A.    Facts

The Court assumes familiarity with the factual background set forth at length in the March 27, 2023 decision.  (Dkt. No. 274).  The Court will briefly summarize the relevant facts regarding spoliation.  Plaintiff commenced this action in December of 2016.  (Dkt. No. 1). During the course of discovery, Defendants uncovered evidence that, in March of 2014, Plaintiff utilized the services of a company named ConfiData to shred 23,020 pounds of paper containing historic records relating to the Site.  (*See* Dkt. No. 247-12).  This occurred despite Plaintiff's "informal" policy to never destroy documents.  (Dkt. No. 249, at 9; Dkt. No. 250, at 40). Defendants were unable to find out through several depositions who ordered the shredding of documents, or what was in them.  (Dkt. Nos. 248, 249, 250).  Plaintiff never issued a litigation hold to prevent the destruction of documents.  (*Id.*).

### B.    Previous Findings

In the March 27, 2023 decision, the Court found that "Plaintiff had a duty to preserve evidence relevant to possible future litigation among the parties relating to the Site long before the document destruction in March 2014."  (Dkt. No. 274, at 27).  Further, the Court found that "Plaintiff's obligation to preserve evidence encompassed the documents that were destroyed by ConfiData in March 2014."  (*Id.*, at 28).  Next, the Court found that "Plaintiff's failure to preserve evidence constituted, at a minimum, gross negligence."  (*Id.*, at 30).  Additionally, the Court found that "Defendants have satisfied their burden of showing that the destroyed documents are relevant."  (*Id.*, at 32).  Thus, the Court found that Plaintiff's destruction of the 23,020 pounds of paper in March 2014 amounted to spoliation of evidence, leaving only the question of appropriate sanctions.

4

### C.     Other Discovery Abuses

Defendants' joint memorandum in support of spoliation sanctions also alleges several other discovery abuses perpetrated by Plaintiff.  (Dkt. No. 291, at 7–13).  However, the Court declines to address these matters, as they go beyond the Court's limited request for briefing related to sanctions for the spoliation of evidence discussed in the March 27, 2023 decision.

### D.     Remaining Claims

Plaintiff has two remaining claims in this case made under New York State law.  First, Plaintiff alleges that "Defendants arranged for the disposal and discharge of petroleum products at the Site, including but not limited to transformer oils and lubricants, and are responsible for and/or caused the petroleum discharges on the Site."  (Dkt. No. 43, ¶ 65).  Plaintiff thus asserts a claim under Section 181(5) of New York Navigation law for "the past, present and future Site Related Costs that ELGUA has incurred, and will incur in the future, which are the result of petroleum discharges at or from the Site."  (*Id.*, ¶ 67).  Second, Plaintiff asserts a claim for contribution under N.Y. C.P.L.R. § 1401 and common law "for all Site Related Costs that ELGUA has incurred and will incur in addressing the contamination at the Site."  (*Id.*, ¶ 75).

## III.     APPROPRIATE SANCTIONS

Defendants argue that Plaintiff's "willful destruction of countless relevant evidence and other discovery abuses warrants severe sanctions."  (Dkt. No. 291).  Specifically, Defendants seek dismissal with prejudice of Plaintiff's remaining state-law claims and a monetary sanction of $2,302,000.  (*Id.*).  Plaintiff, on other hand, argues that Defendants' requested sanctions are excessive and that the Court should award no more than $100,000.  (Dkt. No. 292).

### A.     Legal Standard

A party seeking sanctions based on spoliation must establish, by a preponderance of the evidence: "(1) that the party having control over the evidence had an obligation to preserve it at

the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 628 (2d Cir. 2018) (quoting *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012)). A district court has authority to "impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002). "The choice of an appropriate remedy for spoliation 'is confined to the sound discretion of the trial judge and is assessed on a case-by-case basis.'" *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 580 (S.D.N.Y. 2017) (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)).

Sanctions for spoliation of evidence should aim to accomplish three goals: "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'" *West v. Goodyear Tire & Rubber*, 167 F.3d 776, 779 (2d Cir. 1999) (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)). "It is well accepted that a court should always impose the least harsh sanction that can provide an adequate remedy. The choices include—from least harsh to most harsh—further discovery, cost-shifting, fines, special jury instructions, preclusion, and the entry of default judgment or dismissal (terminating sanctions)." *Dorchester Fin. Holdings Corp. v. Banco BRJ S.A.*, 304 F.R.D. 178, 185 (S.D.N.Y. 2014) (citation omitted).

"[T]he Second Circuit has endorsed four factors for a district court to consider in exercising its discretion to impose sanctions pursuant to Rule 37: '(1) the willfulness of the

noncompliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance.'" *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 120 (S.D.N.Y. 2018) (quoting *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010)). A district court is free to consider "the full record in the case in order to select the appropriate sanction." *S. New England Tel. Co.*, 624 F.3d at 144 (citation omitted).

### B.    Discussion

In determining the appropriate sanction for Plaintiff's spoliation of evidence, several factors are particularly relevant in this case: 1) Plaintiff's culpability; 2) the relevance of the evidence and related prejudice caused by spoliation; and 3) the efficacy of lesser sanctions.[1]

### 1.    Culpability

The Court previously found that "Plaintiff knowingly destroyed the documents at issue in March 2014." (Dkt. No. 274, at 29). The Court also noted that Plaintiff never instituted a litigation hold and failed to implement reasonable measures to preserve and protect relevant evidence. (*Id.*). The Court recognized that the shredding "occurred in violation of Plaintiff's unwritten or informal document retention policy to never destroy documents." (*Id.*, at 30). Based on these circumstances, the Court found that "Plaintiff's failure to preserve evidence constituted, at a minimum, gross negligence." (*Id.*).

---

[1] Less applicable here are the duration of the period of noncompliance and whether the non-compliant party had been warned of the consequences of noncompliance, factors which have not been briefed by the parties, and which typically involve a discrete discovery dispute. However, the Court notes that Plaintiff's failure to disclose the destruction of relevant documents was a breach of its discovery obligations and continued for more than four years during this case until defense counsel uncovered the spoliation in September/October of 2021, (Dkt. No. 274, at 22), a lengthy period which supports a serious sanction.

Defendants argue that "[t]he timing of the destruction and the manner in which it was conducted, however, implies greater culpability." (Dkt. No. 291, at 25). According to Defendants, the following facts demonstrate not just gross negligence but intentionality:

> [The destruction of documents] occurred (1) *after* the NYSDEC had commenced an enforcement proceeding that would determine the need for further remedial work at the Site, the costs of which Plaintiff sought from Defendants in this action, (2) *less than a year* before Plaintiff threatened to sue certain Defendants, and (3) while awaiting a judicial decision regarding the site's classification on the State's Registry of Inactive Hazardous Waste Sites.

(*Id.*, at 25) (emphasis in original). Further, Defendants argue that "[t]his greater culpability is also confirmed by the lack of Plaintiff's efforts to disclose or, when confronted with the issue, meaningfully investigate the spoliation," and that "Plaintiff's utter disregard for the legal process is highlighted by its failure on multiple, repeated occasions to educate its 30(b)(6) witnesses." (*Id.*, at 26).

In response, Plaintiff points out that it produced voluminous documents during discovery. (Dkt. No. 292, at 4–10). Notably, Plaintiff does not dispute the timeline cited by Defendants or its failure to disclose/investigate the destruction of documents. Rather, Plaintiff states that the Court "determined that Plaintiff's failure to preserve records at issue amounted to gross negligence," and argues that "Plaintiff's conduct here does not rise to the level of bad faith." (*Id.*, at 13–14). But the Court found that Plaintiff's failure to preserve evidence constituted, *at a minimum*, gross negligence. (Dkt. No. 274, at 30). That does not preclude the Court from finding willfulness or bad faith now. The Court will not go that far but notes that it is a close call based on the facts and circumstances of this case. In any event, the Court finds that Plaintiff's culpability supports a serious sanction.

8

### 2.      Relevance & Prejudice

The Court previously found that "there is sufficient evidence from which a reasonable factfinder could conclude that the destroyed documents would be relevant and favorable to Defendants." (Dkt. No. 274, at 31).  Among other things, the Court noted that the destroyed documents related to the Site and were from the time period at issue and documents containing financial and business records were relevant to Defendants' statute of limitations and scrap recycling defenses.  (*Id.*).  The Court also rejected Plaintiff's argument that Defendants suffered no prejudice from the document destruction, recognizing that Defendants would not necessarily have the missing documents in their own records.  (*Id.*, at 32).

In their joint memorandum, Defendants argue that "[b]ut for the Court's dismissal of Plaintiff's CERCLA claims, the[] . . . documents would have been crucial to certain defenses and to evaluating a defendant's individual nexus to the Site." (Dkt. No. 291, at 17).  Defendants also suggest that the documents "would have been relevant in defending against Plaintiff's pending state law claims or any future claim Plaintiff may attempt to bring."  (*Id.*).  Defendants add that if they had been found liable under CERCLA, the documents would be important for various reasons including the scrap recycling defense and allocating response costs.  (*Id.*, at 18–19).

In response, Plaintiff argues that "any prejudice suffered by Defendants has been very slight." (Dkt. No. 292, at 12).  Plaintiff asserts that "Defendants' prejudice arguments largely rely upon claims that have already been resolved *in Defendants' favor* and potential future claims that are entirely speculative."  (*Id.*) (emphasis in original).  Plaintiff also notes that it produced a "vast quantity of historical documents related to the Site."  (*Id.*, at 13).  According to Plaintiff, "[t]he fact that Defendants successfully moved for summary judgment on the CERCLA claims establishes that the destruction of documents at the Herkimer warehouse did not meaningfully impair their ability to prepare a defense."  (*Id.*).

The Court agrees with Plaintiff's arguments on this issue.  The destruction of documents in this case did not prevent Defendants from making a successful statute of limitations argument to obtain summary judgment on Plaintiff's CERCLA claims.  To the extent Defendants argue that these claims could otherwise have been hindered, such hypothetical prejudice does not support a serious sanction.  As to Plaintiff's remaining state-law claims, it is not clear that the destruction of documents would hinder a defense.  Defendants do not indicate whether Plaintiff's state-law claims are also susceptible to dismissal on statute of limitations grounds, nor do they specifically explain how a defense on the merits would be impaired.  In sum, although the destroyed documents are relevant, the Court finds that the resulting prejudice to Defendants in this case is fairly minimal, and therefore, this factor does not support a serious sanction.[2]

### 3.    Efficacy of Lesser Sanctions

Defendants ask the Court to impose the most severe sanctions possible at this juncture: 1) dismissal of Plaintiff's remaining state-law claims with prejudice; and 2) a monetary sanction against Plaintiff of $2,302,000.  (Dkt. No. 291).  According to Defendants, lesser sanctions are insufficient because "[t]he sheer volume and relevancy of the destroyed documents in a case that is dependent on historical documents warrants dismissal of the state law claims, which are now fundamentally flawed given the destruction that has occurred, and a significant monetary sanction to deter and punish."  (*Id.*, at 29).

In response, Plaintiff contends that these sanctions are out of proportion to the "very slight" prejudice suffered by Defendants.  (Dkt. No. 292, at 12).  Plaintiff also asserts that "[d]ismissal of the state law claims would be an especially harsh result because Defendants have

---

[2] *See Scantibodies Laboratory, Inc. v. Church & Dwight Co., Inc.*, No. 14- Civ. 2275, 2016 WL 11271874, at *24, 2016 U.S. Dist. LEXIS 154396, at *84 (S.D.N.Y. Nov. 4, 2016) (finding that severe sanctions were not warranted where the defendant "has not explained the nature of the actual prejudice it suffered") *report and recommendation adopted*, 2017 WL 605303, 2017 U.S. Dist. LEXIS 21223 (S.D.N.Y. Feb. 15, 2017).

already obtained summary judgment on the CERCLA claims," and that "dismissing the state law claims with prejudice would entirely deprive Plaintiff of its day in court and its opportunity for a hearing on the merits with respect to Defendants' culpability for contaminating the Site." (*Id.*, at 13). Further, Plaintiff argues that the monetary sanction sought by Defendants, $2,302,000, is excessive because it approximates their attorneys' fees for the entire case. (*Id.*, at 14). According to Plaintiff, "the absolute maximum of any monetary sanction in this case should be the amount of documented attorneys' fees and costs actually incurred by Defendants exclusively in connection with the spoliation issue." (*Id.*, at 15). Instead, Plaintiff proposes that a monetary sanction of $100,000 would be appropriate. (*Id.*, at 16).

### a.    State Law Claims

In general, "dismissal is a 'drastic remedy,' [and] it 'should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions." *West*, 167 F.3d at 779 (quoting *John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988)). Where a court has already resolved a plaintiff's federal claims, dismissal of remaining state-law claims as a sanction appears to be exceedingly rare, *see King v. Fleming*, 899 F.3d 1140, 1154 (10th Cir. 2018), and Defendants do not cite any authorities supporting such a sanction in this situation. Absent live federal claims, the usual practice is to decline supplemental jurisdiction over remaining state-law claims. *See Sotak v. Bertoni*, 501 F. Supp. 3d 59, 86 (N.D.N.Y. 2020) ("Because summary judgment will be granted as to the [federal] claims, the continued exercise of supplemental jurisdiction over [the plaintiff's] state law claims will be declined."). Where a court declines supplemental jurisdiction, state-law claims are dismissed without prejudice, which permits the plaintiff to seek relief in State court. *See, e.g.*, *Bisang v. New York State Educ. Dept.*, No. 20 Civ. 195, 2023 WL 5351159, at *18, 2023 U.S. Dist. LEXIS 145904, at *53 (N.D.N.Y. Aug. 21, 2023).

11

If state-law claims are dismissed with prejudice as a sanction, however, it operates as an adjudication on the merits, and the plaintiff would be effectively barred from seeking relief in State court. *See* Fed. R. Civ. P. 41(b). The Court declines to impose such a drastic sanction. Although Plaintiff's destruction of documents was egregious, it did not stop Defendants from mounting a successful defense in federal court, and Defendants have not shown how the spoliation would fundamentally compromise their defense in State court.[3] Thus, while dismissal would serve punitive and deterrent purposes, it would be out of proportion to the prejudice suffered by Defendants. In addition, by avoiding litigation on the merits in State court, dismissal of Plaintiff's state-law claims would arguably put Defendants in a better position than if the spoliation had not occurred, thereby exceeding the remedial purpose of sanctions in this case. Further, lesser sanctions are available and sufficient to meet the goals of the spoliation doctrine. As discussed below, the Court finds that a substantial monetary sanction is appropriate here. Therefore, once the issue of sanctions is resolved, the Court will decline supplemental jurisdiction and dismiss Plaintiff's state-law claims without prejudice.

### b.    Monetary Sanction

According to Defendants, "the Court should require Plaintiff to pay monetary sanctions to compensate Defendants for the total cost of their defense," which amounts to $2,501,753.65 in attorney's fees. (Dkt. No. 291, at 28). Defendants note that "[t]he total attorneys' fees correlated almost perfectly to $100 per pound of documents destroyed." (*Id.*). Accordingly, in a symbolic gesture that would also spare the Court reviewing extensive attorney time records, Defendants ask for a monetary sanction of $2,302,00. (*Id.*).

---

[3] The Court notes that a State court judge would be in the best position to evaluate the impact of the spoliation on defending against Plaintiff's state-law claims. A State court judge would also be in a position to fashion relief, such as an adverse inference against Plaintiff.

The Court finds that this request is inappropriate for several reasons.  As relevant here, a sanction should "deter parties from engaging in spoliation" and "restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'"  *West*, 167 F.3d at 779 (quoting *Kronisch*, 150 F.3d at 126).  The amount sought by Defendants would no doubt serve a deterrent effect, but it is out of proportion to Plaintiff's act of spoliation and the actual prejudice to Defendants.  And if the Court granted such relief—effectively ordering Plaintiff to pay all the defense costs since the inception of the case, Defendants would be in a better position than if the spoliation had not occurred.[4]  Thus, while the Court recognizes that a substantial monetary sanction is warranted, it must be scaled down to suit the facts of the case.

Based on the Court's review of authorities, monetary sanctions for spoliation are typically tailored to the attorney's fees specifically related to the spoliation.  For example, a court may award reasonable attorney's fees and costs associated with filing a spoliation motion.  *See In re NTL, Inc. Securities Litig.*, 244 F.R.D. 179, 201 (S.D.N.Y. 2007).  In addition, "compensable costs may arise either from the discovery necessary to identify alternative sources of information . . . or from the investigation and litigation of the document destruction itself."  *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 78 (S.D.N.Y. 1991).  In this case, the record shows that Defendants expended substantial time to uncover, investigate, and litigate Plaintiff's spoliation of documents.  The Court finds that this specific time is the best measure for awarding attorney's fees to address Plaintiff's destruction of documents and the purposes of the spoliation doctrine. *See also Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 103–04 (2017) (holding that

---

[4] To the extent Defendants suggest that Plaintiff would not have sued in the first place if the documents were retained, such speculation does not provide a sufficient basis to formulate an appropriate sanction.

when a court sanctions a litigant for bad-faith conduct by ordering it to pay the other side's legal fees, "such an order is limited to the fees the innocent party incurred solely because of the misconduct—or put another way, to the fees that party would not have incurred but for the bad faith").

### 4.   Summary

As discussed above, the Court finds that Plaintiff's spoliation of documents is deserving of a serious sanction.  While dismissal of Plaintiff's state-law claims is not appropriate, the Court will impose a monetary sanction tied to attorney's fees related to the spoliation issue.  Because Defendants have not submitted supporting billing records, however, the Court lacks an evidentiary basis to assess reasonable attorney's fees and cannot impose the sanction at this time. *See Durant v. Traditional Investments, Ltd.*, 135 F.R.D. 42, 50 (S.D.N.Y. 1991) ("In order to support the award of court-ordered attorney's fees and expenses, the party seeking such an award must provide the Court with contemporaneous time and expense records specifying, for each attorney performing work on a matter, the date, the hours expended, and the nature of the work done.").

## IV.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's request for spoliation sanctions (Dkt. No. 291) is **DENIED at this time**; and it is further

**ORDERED** that the parties are directed to meet and confer regarding an amicable resolution of attorney's fees and costs related to the spoliation of documents, and if they are able to reach a resolution, file a status report no later than September 18, 2023; and it is further

**ORDERED** that if the parties are unable to reach a resolution, Defendants may submit contemporaneous billing records and affidavits in support of attorney's fees related to the spoliation of documents, no later than September 25, 2023; and it is further

**ORDERED** that Plaintiff shall submit any opposition to Defendants' request no later than October 2, 2023.[5]

**IT IS SO ORDERED.**

Dated: <u>September 7, 2023</u>
          Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

---

[5] Given the length of time that this case has been pending and the amount of time that the Court has provided the parties to attempt to resolve the sanctions issue, the Court will not be inclined to grant further extensions of time.